The STATE of Ohio, Appellee,

v.

BANKS, Appellant.

[Cite as *State v. Banks* (1992), 78 Ohio App.3d 206.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–479.

Decided Feb. 4, 1992.

*Michael Miller*, Prosecuting Attorney, and *Bonnie L. Maxton*, Assistant Prosecuting Attorney, for appellee.

*Turner & Wright* and *Carol A. Wright*, for appellant.

---

PETREE, Judge.

Defendant, Johnnie Lee Banks, appeals from his conviction and sentence for the murder of Nathaniel Poellnitz. In this appeal, he contends that the trial court incorrectly instructed the jury with respect to his prior conviction for voluntary manslaughter, that his conviction is unsupported by sufficient evidence and is against the manifest weight of the evidence, and that he was denied effective assistance of counsel. Because we agree that the trial court erroneously instructed the jury that it could consider defendant's prior conviction as bearing upon his guilt on the instant charge, we reverse the judgment of conviction and remand the matter for a new trial.

The facts of this case revolve around an argument which took place in front of defendant's home on the evening of June 28, 1990. The victim, Nathaniel Poellnitz, and his friend, Tommy Thompson, became involved in an altercation with one of defendant's friends, Richard Clements. Defendant took no part in this first altercation and it eventually broke up without serious incident. Later that evening, Poellnitz and Thompson came to defendant's home and asked to speak to Clements, who had come over to use defendant's kitchen. Clements came out of the house and onto the front porch where a fight soon erupted between Clements, Thompson and Poellnitz. During this fight, Poellnitz sustained a five-inch deep knife wound to the chest. The forensic pathologist later testified that this injury was the cause of death.

Tommy Thompson was the state's primary witness at trial. He testified that during the fight defendant appeared at the front door and that without a word he grabbed Poellnitz with one arm and stabbed him with the other. When asked by the prosecutor, Thompson could think of no motive for defendant's actions. Thompson next heard Poellnitz say the words "Tom, break" and they both left the porch running. Thompson later learned that Poellnitz had collapsed and died several yards from defendant's home.

Defendant admits causing the victim's death, but contends that it was an accident. He testified that he was sitting on the porch eating from a can of peaches with a survival knife when Thompson and Poellnitz attacked Clements. Still holding the survival knife, defendant came to his friend's aid. As he approached, someone called out the word "break" and Thompson and Poellnitz began to run. Defendant explained that as Poellnitz turned, he ran into the knife defendant was holding.

Defendant was indicted by the Franklin County Grand Jury on one count of murder with a specification that he had previously been convicted of voluntary manslaughter in 1980. Following a trial on this charge, the jury returned a verdict of guilty, specifying further that defendant had previously been convicted of voluntary manslaughter. The court imposed a sentence of fifteen years to life imprisonment and defendant filed this timely appeal, asserting the following assignments of error:

"I. The trial court erred in instructing the jury that they could consider the prior conviction as bearing upon the defendant's absence of mistake or accident.

"II. (A) Appellant Johnnie Lee Banks' conviction for the murder of Nathaniel Poellnitz was based on insufficient evidence as a matter of law.

"(B) The conviction of appellant Johnnie Lee Banks for the murder of Nathaniel Poellnitz was against the manifest weight of the evidence.

"III. Appellant was denied the effective assistance of counsel."

I

In the first assignment of error, defendant maintains that the trial court erred when it instructed the jury that it could consider defendant's prior conviction as bearing on the absence of mistake or accident.

The indictment in this case included a specification that defendant had previously been convicted of voluntary manslaughter. At trial, the defense stipulated to this fact. The specification was apparently offered pursuant to R.C. 2941.142 and 2929.11. The latter section provides for the imposition of a period of actual incarceration upon persons convicted of felonies, other than murder or aggravated murder, when the offender has previously been convicted of aggravated murder, murder, or any aggravated felony. R.C. 2941.142 sets out the form of the specification and the proof necessary to establish a prior conviction for purposes of imposing a sentence of actual incarceration pursuant to R.C. 2929.11. By their own terms, neither of these sections applies to persons convicted of murder. Defendant was not indicted nor was the jury instructed on any charge other than murder. The penalties for murder are set forth, not in R.C. 2929.11, but in R.C. 2929.02(B). That section provides that the sentence imposed for murder shall be an indefinite term of fifteen years to life. The only specification relevant to this charge, that for using a firearm while committing a felony pursuant to R.C. 2929.71, is not applicable in this case. Because the specification that defendant had previously been convicted of voluntary manslaughter was not relevant to either the crime charged or the penalty for that offense, the court erred in submitting this question to the jury.

This error was compounded in the court's final instructions to the jury. The court instructed that:

"If you find from other evidence that the defendant committed the action charged in the indictment, then you may consider the evidence of the other act that being evidence of an earlier conviction for voluntary manslaughter, as bearing upon the defendant's absence of mistake or accident."

While counsel for defendant raised no objection to this instruction, the state did object, asking the court for an instruction directing the jury to disregard the instruction on absence of mistake or accident. The record indicates that this objection was overruled by the trial court.

As a preliminary matter, the state argues that defendant has failed to preserve and therefore waived any error in the court's instructions by failing to assert an objection thereto. We disagree. Crim.R. 30(A) provides that "[a] party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. * * *" The rationale behind this rule is that the court should be made aware of alleged errors in the instructions when it still has an opportunity to correct the mistake or defect. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 33, 65 O.O.2d 129, 131, 303 N.E.2d 81, 84–85 (construing the analogous Civ.R. 51[A]). Where a party fails to interpose a specific objection to the court's instructions, the error is waived absent a finding of plain error. *State v. Underwood* (1983), 3 Ohio St.3d 12, 3 OBR 360, 444 N.E.2d 1332, paragraph one of the syllabus; *State v. Lane* (1976), 49 Ohio St.2d 77, 3 O.O.3d 45, 358 N.E.2d 1081, paragraph one of the syllabus. However, this rule has not been applied so rigidly as to require a formal objection in every case.

In *State v. Wolons* (1989), 44 Ohio St.3d 64, 67, 541 N.E.2d 443, 446, the court observed that " * * * if a party makes his position sufficiently clear to give the court an opportunity to correct a mistake or defect, then the rationale for formally objecting is no longer present." The court held that the failure to formally object following a trial court's refusal to instruct the jury on a given matter does not waive the error " * * * (1) where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and (2) the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury." *Id.* at paragraph one of the syllabus. We believe that this same rationale applies in this case. The state's specific objection to the instruction at issue made the court aware of the error now alleged on appeal. Because the court was given an opportunity to correct the defect before the jury retired, the purpose underlying Crim.R. 30(A) was served. No further

purpose would be served by requiring defense counsel to stand and echo the same objection previously asserted by the state. Where one party brings a defect in the jury instructions to the court's attention by raising an objection thereto, the claim of error is also preserved for the opposing party, whether or not that party formally objects on the same grounds.

■ Having determined that this issue was not waived by defendant's failure to object, we turn to consider the merits of the court's instruction. Evidence that an accused has committed other crimes wholly independent of the offense for which he or she is on trial is not admissible to prove that the accused has a propensity toward the commission of a certain type of crime. *State v. Mann* (1985), 19 Ohio St.3d 34, 19 OBR 28, 482 N.E.2d 592, paragraph one of the syllabus; *State v. Wilkinson* (1980), 64 Ohio St.2d 308, 314, 18 O.O.3d 482, 486, 415 N.E.2d 261, 267; *State v. Hector* (1969), 19 Ohio St.2d 167, 48 O.O.2d 199, 249 N.E.2d 912, paragraph one of the syllabus. This rule is, however, subject to a number of exceptions. Evid.R. 404(B); R.C. 2945.59; *Hector, supra,* at paragraph two of the syllabus. As the matters enumerated in Evid.R. 404(B) and R.C. 2945.59 codify exceptions to the common law, they are construed strictly against admissibility. *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, paragraph one of the syllabus. Evidence of other acts may be admitted where one of the matters listed in Evid.R. 404(B) or R.C. 2945.59 is a material issue in the case at hand and the evidence is relevant and probative of that issue. *Broom, supra; State v. Gardner* (1979), 59 Ohio St.2d 14, 20, 13 O.O.3d 8, 12, 391 N.E.2d 337, 342.

■ Among the exceptions enumerated in Evid.R. 404(B) are other acts offered to disprove a claim of mistake or accident. When offered for this purpose, the evidence may support an inference that the accused acted intentionally or purposefully with respect to the crime charged. Such an inference is drawn from the recurrence of similar incidents when in all probability these incidents would not recur by accident or inadvertence. 2 Wigmore, Evidence (1979), Sections 302 and 363. To support such an inference, it is necessary that the other acts be similar in some relevant manner to the crime charged. The evidence must have such a temporal, modal, or situational relationship to the crime charged that the evidence reasonably discloses a motive or purpose for the commission of the offense charged in the indictment. *State v. Burson* (1974), 38 Ohio St.2d 157, 159, 67 O.O.2d 174, 175, 311 N.E.2d 526, 529; *State v. Moore* (1948), 149 Ohio St. 226, 36 O.O. 566, 78 N.E.2d 365, paragraph one of the syllabus.

■ In this case, the evidence of defendant's prior conviction was neither offered to disprove a claim of mistake or accident nor did it have any relevance to the question of intent. The conviction was stipulated to only for

the purpose of establishing the specification in the indictment. The state made no attempt to explain the circumstances of the crime or to explain how the crime was relevant to disproving defendant's claim that he acted accidentally and without purposeful intent. The mere fact that an accused has previously threatened or assaulted others has no bearing on whether the murder of an entirely different person was intentional. Without a showing that the prior crime was similar in some relevant manner to the acts charged at trial, it was error to instruct the jury that they could consider defendant's conviction for voluntary manslaughter as bearing upon the absence of mistake or accident. Furthermore, we find this error to be particularly prejudicial given the fact that defendant's entire defense rested upon his claim of accident and that the state's case was essentially based upon the testimony of a single witness.

The first assignment of error is well taken.

## II

In the second assignment of error, defendant maintains that his conviction is supported by insufficient evidence and that it is against the manifest weight of the evidence.

When reviewing a claim of insufficient evidence, the test is whether, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573. Under this standard of review, it is the mind of the trier of fact, not the reviewing court, that must be convinced. *State v. Petro* (1947), 148 Ohio St. 473, 501, 36 O.O. 152, 163, 76 N.E.2d 355, 369. Accordingly, the weight given to the evidence and the credibility of witnesses are issues primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. A judgment of conviction will not be reversed on the grounds of insufficient evidence where there is substantial evidence which, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132.

Defendant concedes each of the elements of the crime charged except the requisite mental state—purposefully causing the death of another. On this point, the testimony is in direct conflict. Defendant's explanation was contradicted by the testimony of the state's primary witness, Tommy Thompson. If believed, Thompson's testimony supports an inference that defendant

acted purposefully and not accidentally. Viewed in a light most favorable to the prosecution, the evidence is sufficient to sustain a conviction of murder.

In a separate argument, defendant asserts that his conviction is against the manifest weight of the evidence. Although a verdict is supported by sufficient evidence, a court of appeals may nevertheless conclude that the verdict is against the manifest weight of the evidence. *State v. Robinson* (1955), 162 Ohio St. 486, 487, 55 O.O. 388, 388–389, 124 N.E.2d 148, 149; *State v. Cooey* (1989), 46 Ohio St.3d 20, 26, 544 N.E.2d 895, 905–906; *Tibbs v. Florida* (1982), 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652. Here, the test is much broader than that applicable to challenges to the sufficiency of the evidence. " * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * * " *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720. See, also, *State v. Abi–Sarkis* (1988), 41 Ohio App.3d 333, 535 N.E.2d 745; *State v. Otten* (1986), 33 Ohio App.3d 339, 515 N.E.2d 1009; *State v. Thrush* (April 23, 1991), Franklin App. No. 90AP–1298, unreported, 1991 WL 64902. This review is tempered by the principle that questions of weight and credibility are primarily for the trier of fact. *DeHass, supra.* Thus, the power to reverse a judgment as against the manifest weight must be exercised with caution and only in the rare case where the evidence weighs heavily against conviction. *Martin, supra,* 20 Ohio App.3d at 175, 20 OBR at 219, 485 N.E.2d at 720; *Abi–Sarkis, supra,* 41 Ohio App.3d at 337–338, 535 N.E.2d at 750.

After a thorough review of the record, we are unable to say that the evidence weighs heavily against conviction. While the state's evidence is not overwhelming, it is not so insubstantial as to produce a manifest miscarriage of justice warranting a new trial. Defendant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence.

The second assignment of error is not well taken.

### III

In the third assignment of error, defendant maintains that he was denied effective assistance of counsel.

A claim of ineffective assistance of counsel requires a two-part showing: first, that counsel's performance was deficient; and, second, that counsel's performance so prejudiced the defense that defendant was deprived of a fair trial, one whose result is reliable. *Strickland v. Washington* (1984),

466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693. The test adopted for alleged violations of the Ohio constitutional right to counsel is essentially the same as that enunciated in *Strickland*. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 17 OBR 219, 220, 477 N.E.2d 1128, 1131. In Ohio, a properly licensed attorney is presumed to be competent. *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 301, 31 O.O.2d 567, 568, 209 N.E.2d 164, 166. Defendant bears the burden of demonstrating a substantial violation of counsel's essential duties and resulting prejudice. *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 497–498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154; *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304.

 Defendant maintains that counsel's performance was deficient in three respects: (1) he failed to object to the trial court's "other acts" instruction; (2) he failed to ask for a jury instruction on the lesser included offenses of voluntary and involuntary manslaughter; and (3) he failed to have the specification tried to the court instead of the jury. Given our holding in the first assignment of error, we find no prejudice in counsel's failure to object to the erroneous "other acts" instruction. As the state's objection preserved the error for review, counsel's failure to object had no effect on the judgment. Defendant next claims that trial counsel should have sought instructions on the lesser included offenses of voluntary and involuntary manslaughter. Initially, we doubt that instructions on either of these charges would have been appropriate under the facts of this case. More importantly, counsel's decision not to seek an instruction concerning a lesser included offense to the crime charged is a sound trial strategy which does not fall outside the wide range of reasonable professional assistance. *State v. Clayton* (1980), 62 Ohio St.2d 45, 48, 16 O.O.3d 35, 37, 402 N.E.2d 1189, 1191–1192; *State v. Catlin* (1990), 56 Ohio App.3d 75, 79, 564 N.E.2d 750, 755.

Finally, we find no prejudice with respect to the specification that defendant had previously been convicted of voluntary manslaughter. As we have discussed, this specification was improperly included in the indictment and it should not have been tried to either the court or the jury. Nevertheless, defendant is unable to show resulting prejudice. Our ruling on the first assignment of error has corrected the erroneous instruction on this point and defendant's prior conviction would have been available to impeach his testimony when he took the stand. Leaving the erroneous jury instruction aside, we do not think the result would have been different had counsel moved to strike the specification from the indictment.

The third assignment of error is not well taken.

For the foregoing reasons, the first assignment of error is sustained and the second and third assignments of error are overruled. The judgment is reversed and the cause is remanded to the trial court for a new trial.

*Judgment reversed*
*and cause remanded.*

WHITESIDE and McCORMAC, JJ., concur.